Jeffrey T. Thomas, SBN 106409
  jtthomas@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: (949) 451-3800
Facsimile: (949) 451-4220

Sean S. Twomey, SBN 279527
  stwomey@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7284
Facsimile: (213) 229-6284

Christopher J. Renk (*pro hac vice* to be filed)
  crenk@bannerwitcoff.com
**BANNER & WITCOFF, LTD.**
71 South Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

*[Additional Counsel Listed on Signature Page]*

*Attorneys for Plaintiff NIKE, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIKE, INC.,<br><br>        Plaintiff,<br><br>    vs.<br><br>SKECHERS U.S.A., INC.,<br><br>       Defendant | Case No.  2:19-cv-08418<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff NIKE, Inc. ("NIKE") for its Complaint against Defendant Skechers U.S.A., Inc. ("Skechers") alleges as follows:

**INTRODUCTION**

1.     NIKE is the world's leading designer, marketer, and distributor of athletic footwear.  NIKE became the industry leader, and maintains that position, by investing heavily in research, design, and development; creating game-changing designs and technologies.

2.     Skechers also markets and distributes athletic footwear.  But instead of innovating its own designs and technologies, Skechers often copies the successful products of others.  As one commentator explained, "it's hard to mask that [Skechers] is a copy-cat" that "has blatantly knocked off" the popular designs of others like NIKE.  (https://sneakernews.com/2016/07/11/skechers-knockoff-shoes/.)

3.     Skechers' copying strategy is driven by its CEO, Robert Greenberg.  In a prior lawsuit, a Skechers corporate witness testified that Mr. Greenberg gave orders to knock-off competitor products.  *adidas Am., Inc. v. Skechers USA, Inc.*, No. 3:15-CV-01741-HZ, 2017 WL 3319190, at *12 (D. Or. Aug. 3, 2017).  Even Skechers' attorneys admitted that Skechers sets-out to make "Skecherized version[s]" of competitor products, and that the directions to do so come from Mr. Greenberg.  *Id*.

4.     Skechers contends it merely takes inspiration from competitor products, which it calls "Skecherizing."  But that argument is belied by Skechers' own documents.  In a prior lawsuit, a court found Skechers uses code words in its internal documents to attempt to shield the documents from discovery.  *Id*.  The documents Skechers hoped to hide from discovery in that case showed Skechers employees holding prototype shoes next to competitor shoes with detailed instructions on how to transform the prototypes into "exact copies" of the competitor shoes.  *Id*.

5.     Skechers' business strategy includes copying its competitors' designs to gain market share.

1

6.     NIKE's strategy is to compete fairly.   As such, NIKE's intellectual property rights are important to its brand, its success, and its competitive position. NIKE pursues available protections of these rights and vigorously protects them against third-party theft and infringement.

7.     This lawsuit is another one in a series of lawsuits NIKE has filed against Skechers to protect its valuable innovations, particularly its designs.

8.     NIKE and its subsidiary, Converse Inc., have previously filed two lawsuits against Skechers for its infringements.   Both of those lawsuits are still pending.

9.     In the first lawsuit, Converse initiated an ITC investigation against Skechers for infringing Converse's trademark rights in the midsole configuration Converse has used on its Chuck Taylor All Star shoes since 1932.   *In the Matter of Certain Footwear Products*, USITC Inv. No. 337-TA-936.   The illustrations below show an authentic Converse All Star shoe next to an example Skechers' infringing shoe that bears an identical midsole configuration.

**Converse All Star Shoe**      **Skechers Infringing Shoe**

 

10.     The second lawsuit is currently pending in this Court.   *NIKE, Inc. v. Skechers U.S.A., Inc.*, Case No. 2:17-cv-08509-JAK (Ex).   NIKE filed that lawsuit to stop Skechers' infringements of NIKE's patented NIKE Free and Flyknit designs. The illustrations below show examples of NIKE's patented designs next to examples of Skechers' infringing shoes at issue in that lawsuit.

| Examples of Skechers' Infringements in Pending Lawsuit | |
|---|---|
| **NIKE Designs** | **Skechers Infringing Shoes** |
|  |  |
|  |  |

11.   Skechers continues to copy NIKE's designs.  In particular, Skechers is now copying NIKE's VaporMax designs and NIKE's Air Max 270 designs.

12.   The illustrations below show examples of NIKE's VaporMax and Air Max 270 shoes next to examples of Skechers' infringing shoes.

| Examples of Skechers' Infringements in this Lawsuit | |
|---|---|
| **NIKE Shoes** | **Skechers Infringing Shoes** |
|  |  |
|  |  |

13.   One commentator posted a YouTube video review of the Skech-Air Atlas shoe—the Skechers shoe shown in the top row above—in which he describes the shoe as a "blatant knockoff" that has a midsole design that looks "exactly the same" as

3

NIKE's VaporMax design. (https://www.youtube.com/watch?v=p99LtKMjjL0). An
excerpt from his post is reproduced below.



14.   NIKE filed this lawsuit to continue to defend its design innovation and
stop Skechers from free-riding on NIKE's significant investment of talent and
resources that are deployed to innovate.

## THE PARTIES

15.   NIKE is a corporation organized under the laws of the State of Oregon
with a principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

16.   Skechers is a corporation organized under the laws of the State of
Delaware with a principal place of business at 228 Manhattan Beach Boulevard,
Manhattan Beach, California 90266.

## JURISDICTION AND VENUE

17.   This is an action for patent infringement arising under the patent laws of
the United States, 35 U.S.C. § 100 *et seq*.  This Court has subject matter jurisdiction
pursuant to 28 U.S.C. §§ 1331 and 1338(a).

18.   This Court has personal jurisdiction over Skechers because Skechers
maintains its headquarters and principal place of business in this District.  This Court
also has personal jurisdiction over Skechers because Skechers regularly solicits and
conducts business in this District and engages in other persistent courses of conduct
in this District.  This Court also has personal jurisdiction over Skechers because
Skechers derives substantial revenue from goods and services sold to persons or

4

entities in this District and commits acts of infringement in this District, including but not limited to making, using, offering to sell, selling, and/or importing products that infringe one or more claims of NIKE's patents at issue in this lawsuit.

19.   Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because Skechers maintains a regular and established place of business in this District and has committed, and continues to commit, acts of infringement in this District, including but not limited to making, using, offering to sell, selling, and/or importing products that infringe one or more claims of NIKE's patents at issue in this lawsuit.

## FACTUAL BACKGROUND

20.   NIKE's principal business activity is the design, development and worldwide marketing and selling of athletic footwear, apparel, equipment, accessories, and services.

21.   NIKE invests heavily in research, design, and development; and those efforts are key to NIKE's success.

22.   NIKE's investments in research, design, and development have led to many innovative footwear designs and technologies, including the designs at issue in this case.

### NIKE'S VAPORMAX AND AIR MAX 270 DESIGNS

23.   NIKE's VaporMax and Air Max 270 designs are associated with footwear with Air sole units.  The Air sole units are located in the midsole area beneath the heel, forefoot, or in both areas.

24.   NIKE first introduced shoes with Air sole units in 1979.  But for the first eight years, the Air sole units were embedded in sole structures and not visible.  They were felt rather than seen.

25.   That changed in 1987, when NIKE introduced its Air Max shoe, which was NIKE's first shoe to showcase a design with a visible Air sole unit.  The original Air Max shoe is shown below.

**Original Air Max**



26.   The revolution of NIKE shoe designs with visible Air sole units had begun.  NIKE shoe designs with visible Air sole units quickly spread, from running to basketball to training and tennis, at the same time becoming a coveted lifestyle product across the globe.

27.   NIKE continued to innovate, creating shoe designs with visible Air sole units over the following three decades.  For example, in 1997, NIKE introduced the Air Max 97 shoe, which had a visible Air sole unit along the entire sole of the shoe. The illustration below shows the evolution of NIKE shoe designs with visible Air sole units from 1987 through 2015.

**Evolution of NIKE Shoe Designs With Visible Air Sole Units**



28.   NIKE continued the design evolution in 2017 when it introduced its VaporMax footwear.  The VaporMax built upon the nearly 30-year legacy of NIKE shoe designs with visible Air sole units.  An example NIKE VaporMax shoe is shown below with its unique design.

**NIKE's VaporMax**



29.   In 2018, NIKE introduced its Air Max 270.  While there had been other NIKE shoe designs with Air sole units designed especially for lifestyle, they all featured Air sole units originally created for running performance.  The Air Max 270

was NIKE's first 100-percent lifestyle Air shoe.  An example NIKE Air Max 270 shoe is shown below with its unique design.

**NIKE's Air Max 270**



30.    NIKE's VaporMax and Air Max 270 designs are important components of NIKE's strategy and they are integral to NIKE's success.

31.    NIKE has taken steps to protect its VaporMax and Air Max 270 designs, including by filing and obtaining design patents around the world.

32.    Relevant to this dispute, NIKE owns all right, title, and interest in, and has the right to sue and recover for past, present, and future infringement of, design patents related to its VaporMax designs, including the design patents identified in Table 1 below (the "VaporMax Patents").

| Table 1:  VaporMax Patents | | | |
| --- | --- | --- | --- |
| U.S. Pat. No. | Title | Issue Date | Complaint Exhibit |
| D850,068 | Shoe | June 4, 2019 | A |
| D850,072 | Shoe | June 4, 2019 | B |
| D850,074 | Shoe | June 4, 2019 | C |
| D850,075 | Shoe | June 4, 2019 | D |
| D850,076 | Shoe | June 4, 2019 | E |
| D850,077 | Shoe | June 4, 2019 | F |

33.   The U.S. Patent and Trademark Office ("USPTO") duly and legally issued the VaporMax Patents on June 4, 2019.  A copy of each VaporMax Patent is attached to this Complaint as indicated in Table 1.

34.   NIKE gives the public, including Skechers, notice that the VaporMax designs are patented by marking its VaporMax footwear pursuant to 35 U.S.C § 287(a), including by virtually marking the footwear at www.nike.com/patentsvirtualmarking as of or shortly after the date of issuance of each patent.

35.   NIKE also owns all right, title, and interest in, and has the right to sue and recover for past, present, and future infringement of, design patents related to its Air Max 270 designs, including the design patents identified in Table 2 below (the "Air Max 270 Patents").

| Table 2:  Air Max 270 Patents | | | |
|---|---|---|---|
| **U.S. Pat. No.** | **Title** | **Issue Date** | **Complaint Exhibit** |
| D858,962 | Shoe | September 10, 2019 | G |
| D860,606 | Shoe | September 24, 2019 | H |
| D860,607 | Shoe | September 24, 2019 | I |
| D860,608 | Shoe | September 24, 2019 | J |
| D860,610 | Shoe | September 24, 2019 | K |
| D860,611 | Shoe | September 24, 2019 | L |

36.   The USPTO duly and legally issued the Air Max 270 Patents on September 10 and 24, 2019.  A copy of each Air Max 270 Patent is attached to this Complaint as indicated in Table 2.

37.   NIKE gives the public, including Skechers, notice that the Air Max 270 designs are patented by marking its Air Max 270 footwear pursuant to 35 U.S.C § 287(a), including by virtually marking the footwear at www.nike.com/patentsvirtualmarking as of or shortly after the date of issuance of each patent.

38.   The VaporMax Patents and the Air Max 270 Patents are all presumed to be valid.

9

### SKECHERS USES THE VAPORMAX DESIGNS WITHOUT AUTHORIZATION

39. Without NIKE's authorization, Skechers has made, used, offered for sale, sold, and/or imported into the United States shoes having designs that violate the VaporMax Patents. Skechers' infringing shoes include at least the Skech-Air Atlas with model numbers 52970 and 52973, as well as all other shoes bearing the same or similar designs to the Skech-Air Atlas regardless of model name and number (collectively, the "Skech-Air Atlas Shoes").

40. The overall appearance of the claimed designs of the VaporMax Patents and the corresponding designs of the Skech-Air Atlas Shoes are substantially the same.

41. An ordinary observer will perceive the overall appearance of the claimed designs of the VaporMax Patents and the corresponding designs of the Skech-Air Atlas Shoes to be substantially the same.

42. Tables 3 through 8 below illustrate Skechers' infringements by comparing figures from the VaporMax Patents with images of the Skech-Air Atlas Shoes. In NIKE's patent figures, the claimed designs are shown in solid lines. The broken lines depicting the remainder of the shoe show features that form no part of the claimed designs.

| Table 3: Comparison of '068 Patent with Skech–Air Atlas Shoe |
| --- |



FIG. 1

FIG. 2

FIG. 3

| Table 4: Comparison of '072 Patent with Skech–Air Atlas Shoe |
| --- |



FIG. 1

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Table 4:  Comparison of '072 Patent with Skech-Air Atlas Shoe |
|---|



FIG. 2

| Table 5:  Comparison of '074 Patent with Skech-Air Atlas Shoe |
|---|



FIG. 1

FIG. 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Table 6:  Comparison of '075 Patent with Skech–Air Atlas Shoe**

FIG. 1

FIG. 2

FIG. 3

FIG. 5



**Table 7: Comparison of '076 Patent with Skech-Air Atlas Shoe**

FIG. 1

FIG. 2

FIG. 3



**Table 7:  Comparison of '076 Patent with Skech-Air Atlas Shoe**

FIG. 5

**Table 8:  Comparison of '077 Patent with Skech-Air Atlas Shoe**

FIG. 1

FIG. 2



**Table 8:  Comparison of '077 Patent with Skech-Air Atlas Shoe**

FIG. 3

FIG. 4

FIG. 5

43.    Without NIKE's authorization, Skechers has made, used, offered for sale, sold, and/or imported into the United States additional shoes having designs that violate at least the '072 Patent and the '074 Patent.  These additional infringing shoes include at least the Skech-Air 92 with model numbers 13221 and 52569, as well as

16

all shoes bearing the same or similar designs to the Skech-Air 92 regardless of model name and number (collectively, the "Skech-Air 92 Shoes").

44.     The overall appearance of the claimed designs of the '072 Patent and the '074 Patent and the corresponding designs of the Skech-Air 92 Shoes are substantially the same.

45.     An ordinary observer will perceive the overall appearance of the claimed designs of the '072 Patent and the '074 Patent and the corresponding designs of the Skech-Air 92 Shoes to be substantially the same.

46.     Tables 9 and 10 below illustrate Skechers' infringements by comparing figures from the '072 Patent and '074 Patent with images of the Skech-Air 92 Shoes. In NIKE's patent figures, the claimed designs are shown in solid lines. The broken lines depicting the remainder of the shoe show features that form no part of the claimed designs.



**Table 9:  Comparison of '072 Patent with Skech-Air 92 Shoe**

FIG. 1

FIG. 2

**Table 10:  Comparison of '074 Patent with Skech-Air 92 Shoe**

FIG. 1



**Table 10:   Comparison of '074 Patent with Skech-Air 92 Shoe**

47.   On information and belief, Skechers intended to copy the claimed designs of the VaporMax Patents by creating the same or similar overall impression as NIKE's designs.

### SKECHERS USES THE AIR MAX 270 DESIGNS WITHOUT AUTHORIZATION

48.   Without NIKE's authorization, Skechers has made, used, offered for sale, sold, and/or imported into the United States shoes having designs that violate the Air Max 270 Patents.  Skechers' infringing shoes include at least the Skech-Air Stratus with model numbers 13275, 13276, and 13278, as well as all shoes bearing the same or similar designs to the Skech-Air Stratus regardless of model name and number (collectively, the "Skech-Air Stratus Shoes"), and the Skech-Air Blast with model numbers 97742, 97743, and 97744, as well as all shoes bearing the same or similar designs to the Skech-Air Blast regardless of model name and number (collectively, the "Skech-Air Blast Shoes").

49.   The overall appearance of the claimed designs of the Air Max 270 Patents, on the one hand, and the corresponding designs of the Skech-Air Stratus Shoes and the Skech-Air Blast Shoes, on the other hand, are substantially the same.

50.   An ordinary observer will perceive the overall appearance of the claimed designs of the Air Max 270 Patents, on the one hand, and the corresponding designs of the Skech-Air Stratus Shoes and the Skech-Air Blast Shoes, on the other hand, to be substantially the same.

51.   Tables 11 through 22 below illustrate Skechers' infringements by comparing figures from the Air Max 270 Patents with images of the Skech-Air Stratus Shoes and the Skech-Air Blast Shoes.  In NIKE's patent figures, the claimed designs are shown in solid lines.  The broken lines depicting the remainder of the shoe show features that form no part of the claimed designs.



**Table 11:  Comparison of '962 Patent with Skech-Air Stratus Shoe**

FIG. 1

FIG. 2

FIG. 3



**Table 12:  Comparison of '606 Patent with Skech-Air Stratus Shoe**

FIG. 1

FIG. 2

FIG. 3

21



| Table 12:  Comparison of '606 Patent with Skech-Air Stratus Shoe |
| --- |

FIG. 4

| Table 13:  Comparison of '607 Patent with Skech-Air Stratus Shoe |
| --- |

FIG. 1

FIG. 2



| Table 14: Comparison of '608 Patent with Skech-Air Stratus Shoe |
|---|

FIG. 1

FIG. 2

FIG. 3



| Table 14:  Comparison of '608 Patent with Skech-Air Stratus Shoe | |
|---|---|
| FIG. 4 | |

| Table 15:  Comparison of '610 Patent with Skech-Air Stratus Shoe | |
|---|---|
| FIG. 1 | |
| FIG. 2 | |

## Table 16:  Comparison of '611 Patent with Skech-Air Stratus Shoe



FIG. 1

FIG. 2

FIG. 3

| Table 16:  Comparison of '611 Patent with Skech-Air Stratus Shoe |
|---|



FIG. 4

| Table 17:  Comparison of '962 Patent with Skech-Air Blast Shoe |
|---|



FIG. 1

FIG. 2





| Table 18:  Comparison of '606 Patent with Skech-Air Blast Shoe | |
|---|---|
| FIG. 3 | |
| FIG. 4 | |

| Table 19:  Comparison of '607 Patent with Skech-Air Blast Shoe | |
|---|---|
| FIG. 1 | |



Table 19:  Comparison of '607 Patent with Skech-Air Blast Shoe

FIG. 2

Table 20:  Comparison of '608 Patent with Skech-Air Blast Shoe

FIG. 1

FIG. 2



**Table 20:  Comparison of '608 Patent with Skech-Air Blast Shoe**

FIG. 3

FIG. 4



**Table 21:  Comparison of '610 Patent with Skech-Air Blast Shoe**

FIG. 1



**Table 21:  Comparison of '610 Patent with Skech-Air Blast Shoe**

FIG. 2

**Table 22:  Comparison of '611 Patent with Skech-Air Blast Shoe**

FIG. 1

FIG. 2

31



**Table 22: Comparison of '611 Patent with Skech-Air Blast Shoe**

FIG. 3

FIG. 4

52.     On information and belief, Skechers intended to copy the claimed designs of the Air Max 270 Patents by creating the same or similar overall impression as NIKE's designs.

**FIRST CLAIM FOR RELIEF**

**(INFRINGEMENT UNDER 35 U.S.C. § 271 OF THE VAPORMAX PATENTS)**

53.     NIKE re-alleges and incorporates by reference the allegations set forth in paragraphs 1–52 of this Complaint.

54.     Skechers, without authorization from NIKE, has made, used, offered for sale, sold, and/or imported in or into the United States, and continues to make, use, offer for sale, sell, and/or import in or into the United States, shoes having designs that infringe the VaporMax Patents, including at least the Skech-Air Atlas Shoes.

55.  On information and belief, Skechers' infringement has been willful, intentional, and deliberate, at least as of the filing date of this complaint.  Skechers knew or should have known that continuing to make, use, offer to sell, sell, and/or import the Skech-Air Atlas Shoes into the United States would directly infringe the VaporMax Patents, yet Skechers infringed and continues to infringe the VaporMax Patents.

56.  NIKE has been and will continue to be irreparably harmed by Skechers' infringements of the VaporMax Patents.

57.  NIKE has no adequate remedy at law for Skechers' infringements of the VaporMax Patents.

58.  On information and belief, Skechers' infringements of the VaporMax Patents will continue unless enjoined by this Court.

## SECOND CLAIM FOR RELIEF

### (INFRINGEMENT UNDER 35 U.S.C. § 271 OF THE '072 PATENT AND '074 PATENT)

59.  NIKE re-alleges and incorporates by reference the allegations set forth in paragraphs 1–52 of this Complaint.

60.  Skechers, without authorization from NIKE, has made, used, offered for sale, sold, and/or imported in or into the United States, and continues to make, use, offer for sale, sell, and/or import in or into the United States, shoes having designs that infringe the '072 Patent and the '074 Patent, including at least the Skech-Air 92 Shoes.

61.  On information and belief, Skechers' infringement has been willful, intentional, and deliberate, at least as of the filing date of this complaint.  Skechers knew or should have known that continuing to make, use, offer to sell, sell, and/or import the Skech-Air 92 into the United States would directly infringe the '072 Patent and '074 Patent, yet Skechers infringed and continues to infringe the '072 Patent and '074 Patent.

33

62.   NIKE has been and will continue to be irreparably harmed by Skechers' infringements of the '072 Patent and '074 Patent.

63.   NIKE has no adequate remedy at law for Skechers' infringements of the '072 Patent and '074 Patent.

64.   On information and belief, Skechers' infringements of the '072 Patent and '074 Patent will continue unless enjoined by this Court.

### THIRD CLAIM FOR RELIEF
### (INFRINGEMENT UNDER 35 U.S.C. § 271 OF THE AIR MAX 270 PATENTS)

65.   NIKE re-alleges and incorporates by reference the allegations set forth in paragraphs 1–52 of this Complaint.

66.   Skechers, without authorization from NIKE, has made, used, offered for sale, sold, and/or imported in or into the United States, and continues to make, use, offer for sale, sell, and/or import in or into the United States, shoes having designs that infringe the Air Max 270 Patents, including at least the Skech-Air Stratus Shoes and the Skech-Air Blast Shoes.

67.   On information and belief, Skechers' infringement has been willful, intentional, and deliberate, at least as of the filing date of this complaint.  Skechers knew or should have known that continuing to make, use, offer to sell, sell, and/or import the Skech-Air Stratus Shoes and Skech-Air Blast Shoes into the United States would directly infringe the Air Max 270 Patents, yet Skechers infringed and continues to infringe the Air Max 270 Patents.

68.   NIKE has been and will continue to be irreparably harmed by Skechers' infringements of the Air Max 270 Patents.

69.   NIKE has no adequate remedy at law for Skechers' infringements of the Air Max 270 Patents.

70.   On information and belief, Skechers' infringements of the Air Max 270 Patents will continue unless enjoined by this Court.

## JURY DEMAND

71.    Pursuant to Federal Rule of Civil Procedure 38(b), NIKE hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, NIKE respectfully prays for:

A.    A judgment and order that Skechers has infringed the VaporMax Patents and the Air Max 270 Patents by making, using, offering to sell, selling, and/or importing its infringing shoes into the United States;

B.    A judgment and order permanently enjoining Skechers and its affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with Skechers, from infringing the VaporMax Patents and the Air Max 270 Patents;

C.    A judgment and order requiring Skechers to pay NIKE damages adequate to compensate NIKE for Skechers' infringements of the VaporMax Patents and the Air Max 270 Patents pursuant to 35 U.S.C. § 284, or the total profit made by Skechers from its infringements of the VaporMax Patents and the Air Max 270 Patents pursuant to 35 U.S.C. § 289;

E.    A judgment and order requiring Skechers to pay NIKE supplemental damages or profits for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed;

F.    A judgment and order requiring Skechers to pay NIKE increased damages up to three times the amount found or assessed pursuant to 35 U.S.C. § 284;

G.    A judgment and order requiring Skechers to pay NIKE pre-judgment and post-judgment interest on any damages or profits awarded;

H.    A determination that this action is an exceptional case pursuant to 35 U.S.C. § 285;

I.    An award of NIKE's attorneys' fees for bringing and prosecuting this action;

J.     An award of NIKE's costs and expenses incurred in bringing and prosecuting this action; and

K.     Such further and additional relief as this Court deems just and proper.

Dated: September 30, 2019

GIBSON, DUNN & CRUTCHER LLP

By:  /s/ Jeffrey T. Thomas

Jeffrey T. Thomas, SBN 106409
  jtthomas@gibsondunn.com
Sean S. Twomey, SBN 279527
  stwomey@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612
Telephone: (949) 451-3800
Facsimile: (949) 451-4220

Christopher J. Renk (*pro hac vice* to be filed)
  crenk@bannerwitcoff.com
Michael J. Harris (*pro hac vice* to be filed)
  mharris@bannerwitcoff.com
Audra C. Eidem Heinze (*pro hac vice* to be filed)
  aheinze@bannerwitcoff.com

BANNER & WITCOFF, LTD
71 South Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

*Attorneys for Plaintiff NIKE, Inc.*