**Morgan Chu**
mchu@irell.com
**Samuel K. Lu**
slu@irell.com
**C. Maclain Wells**
mwells@irell.com
**Thomas C. Werner**
twerner@irell.com
**Jonathan Lindsay**
jlindsay@irell.com
**Conor Tucker**
ctucker@irell.com
**IRELL & MANELLA LLP**
1800 Avenue Of The Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

**Attorneys for Defendant
and Counterclaim-Plaintiff
Skechers U.S.A., Inc.**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIKE, INC., an Oregon Corporation, | Case No.:  19-cv-08418-JAK-E |
| Plaintiff, | |
| vs. | **SKECHERS U.S.A., INC.'S ANSWER TO COMPLAINT AND COUNTERCLAIMS** |
| SKECHERS U.S.A., INC., a Delaware Corporation, | DEMAND FOR JURY TRIAL |
| Defendant. | |

10446395

Skechers U.S.A., Inc. ("Skechers"), the named Defendant in the above-captioned action, hereby answers the Complaint (the "Complaint") of Plaintiff Nike, Inc. ("Nike") and counterclaims against Nike as follows:

1.      Skechers admits that Nike is a designer, marketer, and distributor of athletic footwear.  Skechers lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 1, and therefore specifically denies the same on that basis.

2.      Skechers admits that it markets and distributes athletic footwear. Skechers admits that an unnamed commentator on Sneaker News made the quoted statements set forth in Paragraph 2 of the Complaint, but Skechers specifically denies the veracity of those statements.  Skechers specifically denies the remaining allegations of Paragraph 2 of the Complaint.

3.      Skechers admits that Robert Greenberg is its CEO.  Skechers also admits that it was a party to the *adidas Am., Inc. v. Skechers USA, Inc.*, No. 3:15-16 CV-01741-HZ lawsuit (the "adidas Lawsuit").  Skechers denies that any corporate witness testified, or that its counsel in that other action admitted, that Mr. Greenberg ever "gave orders to knock-off" competitors' products or that Skechers "knocks off" competitors' products.  The court document from the adidas Lawsuit referenced in Paragraph 3 cites characterizations of evidence by an adverse party in opposing summary judgment, is describing inferences that might be drawn from conflicting evidence, and is not itself evidence of anything.  The underlying evidentiary materials speak for themselves.  Skechers specifically denies the remaining allegations of Paragraph 3 of the Complaint.

4.      Skechers admits that its designers identify and interpret consumer trends and preferences, which may include taking inspiration from competitors' products.  Skechers also admits that, when it identifies a popular "look" in the market that consumers want and that is not comprised of any legitimate intellectual property owned by others, the process by which it creates its own version of that

popular "look" to compete in the marketplace is sometimes referred to as "Skecherization."  Skechers denies that it has any corporate policy or practice to "use[] code words in its internal documents to attempt to shield the documents from discovery," or that any court has ever made a binding finding of such a policy or practice.  The court document from the adidas Lawsuit referenced in Paragraph 4 cites characterizations of evidence by an adverse party in opposing summary judgment, is describing inferences that can be drawn from conflicting evidence, and is not itself evidence of anything.  The underlying evidentiary materials speak for themselves.  Skechers specifically denies the remaining allegations of Paragraph 4 of the Complaint.

5.      Skechers denies each and every allegation in Paragraph 5.

6.      Skechers admits that Nike has filed lawsuits and complaints against third-parties, including Skechers.  Skechers denies that "NIKE's strategy is to compete fairly" because, on information and belief, Nike maliciously and unjustifiably maintains litigation to (a) drive up its competitors' costs and (b) create a cloud of doubt regarding competitors' products, in order to discourage retailers from purchasing competitors' products; examples of Nike's unfair competition in this regard include:

- Ignoring "black letter law" and forcing Skechers to re-litigate non-infringement findings in Skechers' favor after Nike's wholly owned subsidiary, Converse Inc. ("Converse"), intentionally decided not to appeal these non-infringement findings. *Certain Footwear Products*, Inv. No. 337-TA-936, Order No. 174 at 85 (Oct. 2019)  (United States International Trade Commission (the "ITC") finding that "[i]t is black letter law that, as the losing party on the issue of non-infringement, Converse was obligated to appeal the Commission's determination on the issue to the Federal Circuit" but failed to do so.)

- Continuing to assert design patent infringement claims against Skechers designs for which Nike has proffered no evidence of infringement before or even after Skechers filed a motion for summary judgment of non-infringement. *See, e.g.*, *Nike, Inc. v. Skechers U.S.A., Inc.*, No. 2:17-cv-08509-JAK, Dkt. 321 (C.D. Cal. Oct. 30, 2019); *id.*, Dkt. 342 (C.D. Cal. Nov. 25, 2019).

- Taking narrow verbal claim construction positions in order to preserve the validity of its design patents being challenged in *inter partes* review proceedings before the Patent Trials and Appeals Board (the "PTAB") and then later disavowing these same verbal claim construction positions in district court when accusing competitors of infringing those design patents.

   o   For example, in the PTAB, Nike set forth "Nike's construction of the claimed design" of U.S. Patent No. D696,853 as follows:

      - Inverted Vs:  the inverted Vs are illustrated as bold lines shown in blue in Illustration 2 below.  They include (i) the three curved upper loop segments and (ii) the interrupted, *i.e.*, dashed, lower segments.  Exhibit 1001 at 1.  The claimed design includes three inverted 'V' shapes.  The Petition refers to the inverted Vs as "inlaid strands."

      - Fine lines:  the arrays of fine lines are illustrated in green in Illustration 2 below and appear within and between the inverted V shapes.  The fine lines are of generally the same width and spaced apart from one another.  They run generally parallel to the inverted Vs formed by the bold lines, however, because the sides of the inverted Vs converge, the fine lines converge and truncate each other and in relation to the inverted Vs.  Exhibit 1001 at 1.  The Petition describes these as "interrupted" lines, and refers to them generally as "space-dye pattern."

10446395

1   *Skechers U.S.A., Inc. v. Nike, Inc.*, IPR2016-01043, Paper 6 at 6-

2   7 (PTAB Aug. 18, 2016)

3   o   The PTAB reiterated Nike's claim construction as follows:

4   Nike asserts the following claim construction:

5   Inverted Vs: the inverted Vs are illustrated as bold lines shown

6   in blue in Illustration 2 below. They include (i) the three curved

    upper loop segments and (ii) the interrupted, *i.e.*, dashed, lower

7   segments. Exhibit 1001 at 1.  The claimed design includes three

    inverted 'V' shapes. The Petition refers to the inverted Vs as

8   "inlaid strands."

9   Fine lines: the arrays of fine lines are illustrated in green in

    Illustration 2 below and appear within and between the inverted

10  V shapes.  The fine lines are of generally the same width and

    spaced apart from one another. They run generally parallel to the

11  inverted Vs formed by the bold lines, however, because the sides

12  of the inverted Vs converge, the fine lines converge and truncate

    each other and in relation to the inverted Vs. Exhibit 1001 at 1.

13  The Petition describes these as "interrupted" lines, and refers to

    them generally as "space-dye pattern."

14

15  *Id.*, Paper 8 at 5-6 (PTAB Nov. 16, 2016)

16  o   But in district court, Nike argued that no verbal claim

17      construction is necessary, asked the district court to ignore its

18      statements to the PTAB upon which Skechers and Nike's other

19      competitors have relied, and, on information and belief, did so

20      because Nike recognizes that the accused Skechers products do

21      not infringe under the claim constructions that Nike set forth in

22      the PTAB.

23  Skechers further denies that "NIKE's strategy is to compete fairly" because, on

24  information and belief, Nike and/or its employees and/or its paid agents have

25  engaged in illegal and/or unethical activity intended to promote the sales and

26  marketing of Nike's products to the detriment of Nike's competitors, including but

27  not limited to (a) illegal experiments with performance-enhancing drugs at the Nike

28  Oregon Project, which were discussed with Nike's Chief Executive Officer Mark

10446395

- 5 -

Parker, as reported by the Wall Street Journal (https://www.wsj.com/articles/nike-ceo-mark-parker-was-briefed-by-banned-coach-on-doping-efforts-11569948694?mod=searchresults&amp;page=1&amp;pos=1) and (b) payments to high school basketball players and their families that would be in violation of NCAA amateurism rules, as reported by ESPN (https://www.espn.com/mens-college-basketball/story/_/id/27403106/filings-suggest-nike-paid-pursuit-players). Skechers lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 6, and therefore specifically denies the same on that basis.

7.   Skechers admits that Nike and its subsidiary Converse have collectively filed four complaints against Skechers, three in district court and one in the ITC. Skechers specifically denies the remaining allegations of Paragraph 7.

8.   Skechers admits that, as of the date of Nike's Complaint, Nike and its subsidiary Converse have previously filed two lawsuits against Skechers, one for design patent infringement and one for trademark infringement.  Skechers admits that both of those lawsuits are pending.  Skechers specifically denies the remaining allegations of Paragraph 8.

9.   Skechers admits that in the first lawsuit, Converse filed a complaint seeking an ITC investigation against Skechers' Twinkle Toes and BOBS shoe lines as well as Skechers' discontinued Daddy'$ Money and Hydee Hytop shoe lines for allegedly infringing Converse's purported trademark rights in the midsole configuration that Converse has used on certain of its Chuck Taylor All Star shoes. Skechers admits that the ITC instituted an investigation titled *In the Matter of Certain Footwear Products*, USITC Inv. No. 337-TA-936.  Skechers denies that the Skechers' Twinkle Toes, BOBS, and Hydee Hytop shoe lines are infringing because, among other things, the ITC determined that Skechers' Twinkle Toes, BOBS, and Hydee Hytop shoe lines ***do not infringe*** Converse's purported trademark rights. Skechers also denies that Converse has trademark rights in the midsole

configuration with regards to Skechers because the ITC determined that

(1) Skechers began using the midsole configuration starting in 2001 and (2) the

evidence showed that, as of 2001, Converse had no trademark rights that it could

assert against Skechers.  Skechers further denies that the Skechers Daddy'$ Money

shoe line is infringing because the ITC determined that Converse has no trademark

rights that it could assert against Skechers.  Skechers admits that the illustration in

Paragraph 9 of the Complaint shows a Converse shoe and a Skechers shoe but

Skechers denies that the Skechers shoe is infringing.  Skechers specifically denies

the remaining allegations of Paragraph 9.

10.     Skechers admits that in the second lawsuit, Nike filed a complaint

accusing the Skechers shoes identified in Paragraph 10 of infringing Nike's design

patents.  Skechers admits that the second lawsuit is titled *NIKE, Inc. v. Skechers

U.S.A., Inc.*, Case No. 2:17-cv-08509-JAK (Ex) and is currently pending in this

Court.  Skechers denies that its shoes infringe the asserted design patents because,

among other things, (1) after Skechers challenged the asserted design patents in

*inter partes* review proceedings, Nike found it necessary to make arguments limiting

the scope of the asserted design patents in order to preserve their validity and

(2) these statements operate as prosecution history estoppels and/or prosecution

disclaimers that limit the scope of the asserted design patents.  Skechers admits that

the illustrations in Paragraph 10 of the Complaint show Nike shoes and Skechers

shoes, but Skechers denies that the Skechers shoes are infringing.  Skechers lacks

knowledge or information sufficient to form a belief about the truth of Nike's

intentions in bringing the second lawsuit, and therefore denies the same on that

basis.  Skechers specifically denies the remaining allegations of Paragraph 10.

11.     Skechers denies each and every allegation in Paragraph 11.

12.     Skechers admits that the illustrations show NIKE's VaporMax and Air

Max 270 shoes next to examples of Skechers' shoes.  Skechers denies that the

Skechers shoes are infringing.  Skechers specifically denies the remaining allegations of Paragraph 12.

13.     Skechers admits that one commentator posted a YouTube video review of the Skech-Air Atlas shoe.  Skechers admits that the commentator made the statements set forth in Paragraph 13, but Skechers specifically denies the veracity of those statements.  Skechers admits that an excerpt from the commentator's post is reproduced in Paragraph 13.  Skechers specifically denies the remaining allegations of Paragraph 13.

14.     Skechers lacks knowledge or information sufficient to form a belief about the truth of Nike's intentions in bringing the instant lawsuit as well as Nike's investments, and therefore denies the same on that basis.  Skechers specifically denies the remaining allegations of Paragraph 14.

15.     Skechers admits the allegations of Paragraph 15.

16.     Skechers admits the allegations of Paragraph 16.

17.     The allegations in Paragraph 17 purport to state a legal conclusion to which no answer is required; if an answer is required, Skechers admits that this action purports to invoke the Court's subject matter jurisdiction pursuant to the statutes cited.  Skechers specifically denies the remaining allegations in Paragraph 17.

18.     Skechers admits this Court has personal jurisdiction over Skechers because Skechers maintains its headquarters and principal place of business in this District.  Skechers also admits that this Court has personal jurisdiction over Skechers because Skechers regularly solicits and conducts business in this District and engages in other persistent courses of conduct in this District.  Skechers further admits that this Court has personal jurisdiction over Skechers because Skechers derives substantial revenue from goods and services sold to persons or entities in this District.  Skechers denies that it has committed acts of infringement in this District.  Skechers denies that it has made, used, offered to sell, sold, and/or

imported products that infringe any claims of Nike's patents at issue in this lawsuit. Skechers specifically denies the remaining allegations of Paragraph 18.

19.     Skechers admits that venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because Skechers maintains a regular and established place of business in this District.  Skechers denies that it has committed, and continues to commit, acts of infringement in this District.  Skechers denies that it has made, used, offered to sell, sold, and/or imported products that infringe any claims of Nike's patents at issue in this lawsuit.  Skechers specifically denies the remaining allegations of Paragraph 19.

20.     Skechers admits the allegations of Paragraph 20.

21.     Skechers lacks knowledge or information sufficient to form a belief about the extent of Nike's investments and the outcome of those efforts, and therefore denies the same on that basis.  Skechers specifically denies the remaining allegations of Paragraph 21.

22.     Skechers lacks knowledge or information sufficient to form a belief about the extent of Nike's investments and the outcome of those efforts, and therefore denies the same on that basis.  Skechers specifically denies the remaining allegations of Paragraph 22.

23.     Skechers admits that Nike's VaporMax and Air Max 270 designs are associated with footwear containing airbag soles.  Skechers admits that the airbag soles are located beneath the foot.  Skechers specifically denies the remaining allegations of Paragraph 23.

24.     Skechers lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 24, and therefore denies the same on that basis.

25.     Skechers lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 25, and therefore denies the same on that basis.

26.     Skechers lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 26, and therefore denies the same on that basis.

27.     Skechers lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 27, and therefore denies the same on that basis.

28.     Skechers admits that an exemplar Nike VaporMax shoe is shown in Paragraph 28 and that the VaporMax contains a visible airbag sole.  Skechers denies that the Nike VaporMax has a unique design, at least as it relates to the patents asserted by Nike in this case.  Skechers lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 28, and therefore denies the same on that basis.

29.     Skechers admits that an exemplar Nike Air Max 270 shoe is shown in Paragraph 29 and that the Air Max 270 contains the word "Air" in its name. Skechers denies that the Nike Air Max 270 has a unique design, at least as it relates to the patents asserted by Nike in this case.  Skechers lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 29, and therefore denies the same on that basis.

30.     Skechers lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 30, and therefore denies the same on that basis.

31.     Skechers admits that Nike has design patents that Nike asserts protect the VaporMax and Air Max 270 designs.  Skechers lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 31, and therefore denies the same on that basis.

32.     Skechers admits that Table 1 purports to be a chart listing the patent numbers, titles, and issue dates of what Nike defines as the VaporMax Patents and that Exhibits A through E purport to be copies of the defined VaporMax Patents and

that said documents speak for themselves and not otherwise.  Skechers lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 32, and therefore denies the same on that basis.

33.     Skechers admits that Table 1 purports to be a chart listing the patent numbers, titles, and issue dates of what Nike defines as the VaporMax Patents and that Exhibits A through E purport to be copies of the defined VaporMax Patents and that said documents speak for themselves and not otherwise.  Skechers lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 33, and therefore denies the same on that basis.

34.     Skechers lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 34, and therefore denies the same on that basis.

35.     Skechers admits that Table 2 purports to be a chart listing the patent numbers, titles, and issue dates of what Nike defines as the Air Max 270 Patents and that Exhibits G through L purport to be copies of the defined Air Max 270 Patents and that said documents speak for themselves and not otherwise.  Skechers lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 35, and therefore denies the same on that basis.

36.     Skechers admits that Table 2 purports to be a chart listing the patent numbers, titles, and issue dates of what Nike defines as the Air Max 270 Patents and that Exhibits G through L purport to be copies of the defined Air Max 270 Patents and that said documents speak for themselves and not otherwise.  Skechers lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 36, and therefore denies the same on that basis.

37.     Skechers lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 37, and therefore denies the same on that basis.

38.    Skechers admits that patents are presumed valid under the law, but denies that the defined VaporMax Patents and the defined Air Max 270 Patents are valid.  Skechers specifically denies the remaining allegations in Paragraph 38.

39.    Skechers admits that it has made, used, offered for sale, sold, and imported into the United States Skech-Air Atlas shoes with model numbers 52970 and 52973.  Skechers specifically denies the remaining allegations in Paragraph 39, including the title preceding Paragraph 39.

40.    Skechers denies each and every allegation in Paragraph 40.

41.    Skechers denies each and every allegation in Paragraph 41.

42.    Skechers admits that Tables 3 through 8 contain figures from what Nike defines as the Vapor Max Patents as well as images of a Skech-Air Atlas shoe. Skechers denies that the Skech-Air Atlas shoe infringes any of the defined Vapor Max Patents.  Skechers admits that each of the defined Vapor Max Patents state on their face that "[t]he broken lines depicting the remainder of the shoe show features that form no part of the claimed design."  To the extent that Paragraph 42 sets forth Nike's claim constructions regarding the scope of the defined Vapor Max Patents, such allegations purport to state a legal conclusion to which no answer is required; if an answer is required, Skechers lacks knowledge or information sufficient to form a belief regarding the correct claim constructions at this time, and therefore denies the same on that basis.  Skechers specifically denies the remaining allegations in Paragraph 42.

43.    Skechers admits that it has made, used, offered for sale, sold, and imported into the United States Skech-Air 92 shoes with model numbers 13221 and 52569.  Skechers specifically denies the remaining allegations in Paragraph 43.

44.    Skechers denies each and every allegation in Paragraph 44.

45.    Skechers denies each and every allegation in Paragraph 45.

46.    Skechers admits that Tables 9 and 10 contain figures from the '072 Patent and the '074 Patent as well as images of a Skech-Air 92 shoe.  Skechers

denies that the Skech-Air 92 shoe infringes either the '072 Patent or the '074 Patent. Skechers admits that the '072 Patent and the '074 Patent state on their face that "[t]he broken lines depicting the remainder of the shoe show features that form no part of the claimed design." To the extent that Paragraph 46 sets forth Nike's claim constructions regarding the scope of the '072 Patent and the '074 Patent, such allegations purport to state a legal conclusion to which no answer is required; if an answer is required, Skechers lacks knowledge or information sufficient to form a belief regarding the correct claim constructions at this time, and therefore denies the same on that basis. Skechers specifically denies the remaining allegations in Paragraph 46.

47.     Skechers denies each and every allegation in Paragraph 47.

48.     Skechers admits that it has made, used, offered for sale, sold, and imported into the United States Skech-Air Stratus shoes with model numbers 13275, 13276, and 13278 as well as Skech-Air Blast shoes with model numbers 97742, 97743, and 97744. Skechers specifically denies the remaining allegations in Paragraph 48, including the title preceding Paragraph 48

49.     Skechers denies each and every allegation in Paragraph 49.

50.     Skechers denies each and every allegation in Paragraph 50.

51.     Skechers admits that Tables 11 through 22 contain figures from what Nike defines as the Air Max 270 Patents as well as images of a Skech-Air Stratus shoe and images of a Skech-Air Blast shoe. Skechers denies that the Skech-Air Stratus shoe or the Sketch-Air Blast shoe infringes any of the defined Air Max 270 Patents. Skechers admits that each of the defined Air Max 270 Patents state on their face that "[t]he broken lines depicting the remainder of the shoe show features that form no part of the claimed design." To the extent that Paragraph 51 sets forth Nike's claim constructions regarding the scope of the defined Air Max 270 Patents, such allegations purport to state a legal conclusion to which no answer is required; if an answer is required, Skechers lacks knowledge or information sufficient to form a

belief regarding the correct claim constructions at this time, and therefore denies the same on that basis.  Skechers specifically denies the remaining allegations in Paragraph 51.

52.     Skechers denies each and every allegation in Paragraph 52.

53.     Skechers incorporates by reference each and every admission, denial, and allegation set forth above in its response to Paragraphs 1 through 52, inclusive, of the Complaint.  Skechers denies that there has been any "INFRINGEMENT…OF THE VAPORMAX PATENTS" by Skechers, as alleged in the title preceding Paragraph 53.

54.     Skechers denies each and every allegation in Paragraph 54.

55.     Skechers denies each and every allegation in Paragraph 55.

56.     Skechers denies each and every allegation in Paragraph 56.

57.     Skechers denies each and every allegation in Paragraph 57.

58.     Skechers denies each and every allegation in Paragraph 58.

59.     Skechers incorporates by reference each and every admission, denial, and allegation set forth above in its response to Paragraphs 1 through 52, inclusive, of the Complaint.  Skechers denies that there has been any "INFRINGEMENT…OF THE '072 PATENT AND '074 PATENT" by Skechers, as alleged in the title preceding Paragraph 59.

60.     Skechers denies each and every allegation in Paragraph 60.

61.     Skechers denies each and every allegation in Paragraph 61.

62.     Skechers denies each and every allegation in Paragraph 62.

63.     Skechers denies each and every allegation in Paragraph 63.

64.     Skechers denies each and every allegation in Paragraph 64.

65.     Skechers incorporates by reference each and every admission, denial, and allegation set forth above in its response to Paragraphs 1 through 52, inclusive, of the Complaint.  Skechers denies that there has been any "INFRINGEMENT…OF

THE AIR MAX 270 PATENTS" by Skechers, as alleged in the title preceding Paragraph 65.

66.     Skechers denies each and every allegation in Paragraph 66.

67.     Skechers denies each and every allegation in Paragraph 67.

68.     Skechers denies each and every allegation in Paragraph 68.

69.     Skechers denies each and every allegation in Paragraph 69.

70.     Skechers denies each and every allegation in Paragraph 70.

71.     Skechers admits that pursuant to Federal Rule of Civil Procedure 38(b), Nike demands a trial by jury of all issues so triable.

## AFFIRMATIVE DEFENSES

AS AND FOR ITS SEPARATE AND AFFIRMATIVE DEFENSES, Skechers alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

1.     Nike's Complaint fails to state any claim against Skechers upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Non-Infringement)

2.     Skechers has not infringed and currently is not infringing any of the Asserted Patents.

## THIRD AFFIRMATIVE DEFENSE

### (Invalidity/Unenforceability)

3.     Each of the Asserted Patents is invalid and/or unenforceable for failure to meet one or more conditions of patentability, including without limitation, those specified in 35 U.S.C. §§ 102, 103, 112, and 171.

## FOURTH AFFIRMATIVE DEFENSE

(Laches, Equitable Estoppel, Waiver, and Unclean Hands)

4.      Nike's claims against Skechers are barred in whole or in part by one or more of the equitable doctrines of laches, equitable estoppel, waiver, and unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

(Limitation on Damages)

5.      Nike's claims for damages are barred and/or limited by 35 U.S.C. §§ 286, 287, and/or 289.

## SIXTH AFFIRMATIVE DEFENSE

(Costs Barred)

6.      Nike's claim for costs is barred and/or limited by 35 U.S.C. § 288.

## SEVENTH AFFIRMATIVE DEFENSE

(No Injunctive Relief)

7.      Nike is not entitled to injunctive relief because any alleged injury is not irreparable, and Nike has an adequate remedy at law.

## EIGHTH AFFIRMATIVE DEFENSE

(No Damages)

8.      Nike has suffered no damages and/or has failed to mitigate its damages, if any.

## NINTH AFFIRMATIVE DEFENSE

(Prosecution History Estoppel)

9.      Nike's claims are barred and/or limited by the doctrine of prosecution history estoppel and/or prosecution history laches.

1

## TENTH AFFIRMATIVE DEFENSE

2

### (Additional Defenses)

3      10.      Skechers is informed and believes and on that basis alleges that it may

4  have additional defenses available to it, which are not fully known and of which it is

5  not presently aware.  Skechers reserves the right to raise and assert further additional

6  defenses after such defenses have been ascertained.

7

## COUNTERCLAIMS

8      Pursuant to Federal Rule of Civil Procedure 13, Skechers counterclaims

9  against Nike and, in support thereof, alleges the following:

10

## PARTIES

11      1.      Counterclaim-Plaintiff Skechers is a corporation organized and existing

12  under the laws of the State of Delaware with a principal place of business at 228

13  Manhattan Beach Boulevard, Manhattan Beach, California 90266.

14      2.      NIKE is a corporation organized and existing under the laws of the

15  State of Oregon with a principal place of business at One Bowerman Drive,

16  Beaverton, Oregon 97005.

17

## JURISDICTION AND VENUE

18      3.      This action arises under the Patent Laws of the United States of

19  America, 35 U.S.C. § 1 *et seq.*  This Court has subject matter jurisdiction over the

20  action under 28 U.S.C. §§ 1331 and 1338, based on an actual controversy between

21  Skechers, on the one hand, and NIKE, on the other hand, for claims under the Patent

22  Laws of the United States of America, 35 U.S.C. § 1 et seq.  Skechers is seeking

23  relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

24      4.      An actual, substantial, and continuing justiciable controversy exists

25  between Skechers and Nike based on Nike having filed a Complaint against

26  Skechers accusing Skechers' Skech-Air Atlas, Skech-Air 92, Skech-Air Stratus,

27  and/or Skech-Air Blast shoe lines (the "Accused Products," collectively) of

28  infringing one or more of the '068, '072, '074, '075, '076, '077, '962, '606, '607, '608,

1   '610, and/or '611 patents (collectively, the "Asserted Patents").  Skechers requires a

2   declaration of its rights by this Court with respect to this actual, substantial, and

3   justiciable controversy.  Specifically, the controversy concerns the invalidity and

4   non-infringement of the Asserted Patents and the right of Nike to maintain suit for

5   alleged infringement of the Asserted Patents.

6        5.      This Court has personal jurisdiction over NIKE, *inter alia*, because

7   Nike has submitted to the personal jurisdiction of this Court by filing the Complaint.

8   Furthermore, upon information and belief, Nike has a regular and established place

9   of business in this judicial district.  For example, upon information and belief, Nike

10  maintains sales, marketing, and product design offices at 3505 Hayden Avenue,

11  Culver City, California 90232 in this judicial district.  Upon information and belief,

12  Nike leases a distribution center in Foothill Ranch, California from which Nike

13  brand apparel and equipment are shipped, and Nike operates a number of retail

14  stores in this judicial district at which it sells and offers for sale its products,

15  including products that allegedly embody the claims of the Asserted Patents.

16       6.      This Court also has personal jurisdiction over NIKE at least because,

17  upon information and belief, NIKE transacts and solicits business in the State of

18  California, including by selling and offering to sell products that allegedly embody

19  the claims of the Asserted Patents.

20       7.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and

21  1400, *inter alia*, because Nike submitted to the venue of this Court by filing the

22  Complaint.

### FIRST COUNTERCLAIM

#### (Declaratory Judgment Of Non-Infringement)

25       8.      Paragraphs 1 to 7 are incorporated herein as set forth above.

26       9.      An actual and justiciable controversy exists between Skechers and Nike

27  as to whether Skechers infringes the Asserted Patents because Nike brought this

28

1  action alleging that Skechers infringes the Asserted Patents and Skechers denies this

2  allegation.

3       10.    Absent a declaration of non-infringement, Nike will continue to assert

4  the Asserted Patents wrongfully against Skechers and thereby cause Skechers

5  irreparable injury.

6       11.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*,

7  Skechers is entitled to a declaration by this Court that Skechers does not infringe

8  any claim of the Asserted Patents under any theory, either directly or indirectly (by

9  way of inducement and/or contributory infringement), literally or through the

10  doctrine of equivalents, willfully or otherwise.

11       12.    This is an exceptional case entitling Skechers to an award of its

12  attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

13  **SECOND COUNTERCLAIM**

14  (Declaratory Judgment Of Invalidity)

15       13.    Paragraphs 1 to 12 are incorporated herein as set forth above.

16       14.    An actual and justiciable controversy exists between Skechers and Nike

17  as to whether the Asserted Patents are valid because Nike brought this action

18  alleging that the Asserted Patents are valid and Skechers denies this allegation.

19       15.    Absent a declaration of invalidity, Nike will continue to assert the

20  Asserted Patents wrongfully against Skechers and thereby cause Skechers

21  irreparable injury.

22       16.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*,

23  Skechers is entitled to a declaration by this Court that the '068, '072, '074, '075, '076,

24  '077, '962, '606, '607, '608, '610, and '611 patents are invalid for failing to comply

25  with the patent law provisions of the United States, as codified in Title 35 of the

26  United States Code, including without limitation, those specified in 35 U.S.C.

27  §§ 102, 103, 112, and 171.

28

17.     This is an exceptional case entitling Skechers to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## **RELIEF SOUGHT**

WHEREFORE, Counterclaim-Plaintiff Skechers respectfully requests that a judgment be entered against Counterclaim-Defendant NIKE as follows:

a.     That Nike take nothing by its Complaint.

b.     That the Court enter judgment in favor of Skechers in this action, and deny Nike all requested relief;

c.     That a declaration be issued that the manufacture, use, offer for sale, sale, and/or importation of the Accused Products, do not infringe and will not infringe the claim of the '068 patent;

d.     That a declaration be issued that the manufacture, use, offer for sale, sale, and/or importation of the Accused Products, do not infringe and will not infringe the claim of the '072 patent;

e.     That a declaration be issued that the manufacture, use, offer for sale, sale, and/or importation of the Accused Products, do not infringe and will not infringe the claim of the '074 patent;

f.     That a declaration be issued that the manufacture, use, offer for sale, sale, and/or importation of the Accused Products, do not infringe and will not infringe the claim of the '075 patent;

g.     That a declaration be issued that the manufacture, use, offer for sale, sale, and/or importation of the Accused Products, do not infringe and will not infringe the claim of the '076 patent;

h.     That a declaration be issued that the manufacture, use, offer for sale, sale, and/or importation of the Accused Products, do not infringe and will not infringe the claim of the '077 patent;

i.      That a declaration be issued that the manufacture, use, offer for sale, sale, and/or importation of the Accused Products, do not infringe and will not infringe the claim of the '962 patent;

j.      That a declaration be issued that the manufacture, use, offer for sale, sale, and/or importation of the Accused Products, do not infringe and will not infringe the claim of the '606 patent;

k.      That a declaration be issued that the manufacture, use, offer for sale, sale, and/or importation of the Accused Products, do not infringe and will not infringe the claim of the '607 patent;

l.      That a declaration be issued that the manufacture, use, offer for sale, sale, and/or importation of the Accused Products, do not infringe and will not infringe the claim of the '608 patent;

m.      That a declaration be issued that the manufacture, use, offer for sale, sale, and/or importation of the Accused Products, do not infringe and will not infringe the claim of the '610 patent;

n.      That a declaration be issued that the manufacture, use, offer for sale, sale, and/or importation of the Accused Products, do not infringe and will not infringe the claim of the '611 patent;

o.      That a declaration be issued that the claim of the '068 patent is invalid;

p.      That a declaration be issued that the claim of the '072 patent is invalid;

q.      That a declaration be issued that the claim of the '074 patent is invalid;

r.      That a declaration be issued that the claim of the '075 patent is invalid;

s.      That a declaration be issued that the claim of the '076 patent is invalid;

t.      That a declaration be issued that the claim of the '077 patent is invalid;

u.      That a declaration be issued that the claim of the '962 patent is invalid;

v.      That a declaration be issued that the claim of the '606 patent is invalid;

w.      That a declaration be issued that the claim of the '607 patent is invalid;

x.      That a declaration be issued that the claim of the '608 patent is invalid;

1      y.    That a declaration be issued that the claim of the '610 patent is invalid;

2      z.    That a declaration be issued that the claim of the '611 patent is invalid;

3      aa.    That the Court find that Nike cannot recover any damages from
4 Skechers;

5      bb.    That the Court find that Nike is not entitled to any other relief at law or
6 in equity;

7      cc.    That the Court declare that this is an exceptional case entitling Skechers
8 to its reasonable attorneys' fees under 35 U.S.C. § 285;

9      dd.    That the Court award Skechers its costs and reasonable attorneys' fees;
10 and

11      ee.    That the Court grant Skechers all other and further relief to which it
12 may show itself to be entitled.

## JURY TRIAL DEMAND

14      Pursuant to Federal Rule of Civil Procedure 38(b), Skechers hereby requests a
15 trial by jury of all issues so triable.

16

17 Dated:  December 2, 2019

18                        Respectfully submitted,
                             IRELL & MANELLA LLP
19

20                        By:    */s/ Samuel K. Lu*
                             Samuel K. Lu

21                        Morgan Chu (70446)
                        mchu@irell.com
22                        Samuel K. Lu (171969)
                        slu@irell.com
23                        C. Maclain Wells (221609)
                        mwells@irell.com
24                        Thomas C. Werner (223792)
                        twerner@irell.com
25                        Jonathan Lindsey (208840)
                        jlindsay@irell.com
26                        Conor Tucker (318075)
                        ctucker@irell.com
27                        IRELL & MANELLA LLP
                        1800 Avenue of the Stars, Suite 900
28                        Los Angeles, California 90067-4276

Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Defendant
And Counterclaim-Plaintiff
Skechers U.S.A., Inc.